**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-00372-CMA

IN RE: HAUCK

STEPHANIE M. MARTIN,

    Plaintiff/Creditor,

v.

GARY DAVID HAUCK, and
BRENDA KAY HAUCK,

    Defendants/Debtors.

---

**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER**

---

    This is an appeal by Debtors/Appellants, Gary D. and Brenda K. Hauck (collectively, "the Haucks"), of the January 13, 2012 Order of the Bankruptcy Court in Adversary Proceeding No. 10-01888.  (Doc. # 13-1 at 202-221.)  In that Order, the Bankruptcy Court considered whether it was required to except from discharge the Haucks' debt to Appellee Stephanie M. Martin ("Martin"), which was entered by way of a Stipulated Judgment in Jefferson County District Court before the Haucks filed their petition for bankruptcy.  (*Id.*)  The Bankruptcy Court found that the Stipulated Judgment precluded the Haucks from contesting their debt and thus, by implication, that the debt was not dischargeable.  (*Id.* at 221.)  On appeal, the Haucks argue that this finding was based on an erroneous interpretation of the law and that the Bankruptcy Court erred by failing to consider one of their arguments.  (Doc. # 23 at 5.)  Jurisdiction is proper under

28 U.S.C. § 158(a)(1).  For the reasons discussed below, the Court affirms the Bankruptcy Court's Order.

## I. BACKGROUND[1]

Martin owned a house in Lakewood, Colorado.  (Doc. # 13-1 at 21.)  In 2006, she told the Haucks that she was having trouble making her mortgage payments.  (*Id* at 22.)  The Haucks offered to purchase Martin's home and to allow her to rent the property from them and repurchase it at a later date when she could again qualify for a mortgage in her own name.  (*Id.*)  Additionally, the parties agreed that Martin would pay the Haucks a $20,000.00 fee and give them a boat in consideration for their help.  (*Id.*)  In September 2006, Martin entered into a contract with Gary Hauck for the sale of the property.  (Doc. # 13-1 at 84.)  A provision of the contract provided that Martin had agreed to provide $138,000 in financing secured by a promissory note and second deed of trust.  (*Id.*)  The note was to have a term of forty years and provided for interest at four percent.  (*Id.*)  The closing on the sale of the property was held on October 3, 2006.  (*Id.* at 23-24.)  Soon after closing, the Haucks instructed Martin to sign the note "paid in full," although the note had not been paid.  (*Id.* at 84, 103.)  In late 2007, the Haucks failed to make one or more mortgage payments on the property, and their lender initiated foreclosure proceedings against the property in December 2007.  (*Id.* at 25.)

---

[1] The following facts are undisputed.

**A.     STATE COURT ACTION**

Martin filed suit against the Haucks in Jefferson County District Court on July 20, 2007.  In her Amended Complaint (Doc. # 13-1 at 21-28), she alleged that the Haucks engaged in extreme and outrageous conduct, deceit based on fraud, civil conspiracy, civil theft, and the violation of a constructive trust.  (*Id.* at 26-27.)   Almost two years into the state court action, Martin filed a motion for entry of default judgment.  (*Id.* at 205.)   On April 30, 2009, the state court entered judgment in favor of Martin and against the Haucks, jointly and severally, in the amount of $516,520.00.  (*Id.*)  The Haucks then filed a motion to vacate judgment and set aside the default judgment, which the state court granted on August 3, 2009.  (*Id.*)  The action was then set for a five-day jury trial to begin in August 2010.  (*Id.*)  However, on May 6, 2010, the parties and their respective legal counsel attended a settlement conference presided over by a retired Colorado District Court Judge.  (*Id.* at 206.)  At the end of the settlement conference, the parties reached an agreement stipulating to the entry of a judgment in the amount of $200,000.  (Doc. # 13-1 at 116.)  The Stipulation, which the parties and their respective attorneys signed, declared that judgment would enter for Martin and against the Haucks jointly and severally, for "deceit based on fraud" and "civil theft" – the second and fourth claims in Martin's Amended Complaint.  (*Id.*)  On May 10, 2010, Martin submitted a Stipulated Judgment, based on the Stipulation, for the Court's approval.  (Doc. # 13-1 at 117-118.)  The state court entered a Judgment approving the Stipulation.  (*Id.*)  The Judgment states, in pertinent part:

> This matter came before the Court on Plaintiff's Request for Entry of Stipulated Judgment. The Court, having reviewed the Parties' Stipulation, hereby enters judgment against Defendants Gary D. Hauck and Brenda K. Hauck, jointly and severally, and in favor of Plaintiff Stephanie M. Martin in the amount of $200,000.00, said entry of judgment being based upon Plaintiff's 2nd Claim for Relief, **Deceit Based on Fraud**, and 4th Claim for Relief, **Civil Theft pursuant to C.R.S. § 18-4-401**, as stated in the Plaintiff's First Amended Complaint and Jury Demand, filed December 21, 2007.

(*Id.* (emphasis in original).)

**B.    BANKRUPTCY ACTION**

On August 17, 2010, the Haucks filed for bankruptcy in the United States Bankruptcy Court for the District of Colorado. (Doc. # 13-1 at 207.) Martin filed a Complaint in the Bankruptcy Court on November 12, 2010, seeking a determination that the debt owed her by the Haucks was not dischargeable in bankruptcy. (Doc. # 13-1 at 9-19.) The Haucks answered, *pro se*, on December 10, 2010. (Doc. # 13-1 at 34-40.)

The instant appeal centers on issues Martin raised in her August 15, 2011 motion for summary judgment. (Doc. # 13-1 at 62-75.) Specifically, in that motion, Martin argued that the debt owed her by the Haucks was non-dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4).[2] (*Id.* at 62.) Under 11 U.S.C. § 523(a), an individual debtor who owes money to a creditor cannot get that debt discharged if he obtained the money giving rise to the debt by:

---

[2]  Martin also raised an argument that the debt was non-dischargeable pursuant to § 523(a)(6). (Doc. # 13-1 at 62.) The Bankruptcy Court did not address this argument and, thus, the Court need not either, as no assertions of error are premised on it.

4

>    (2)(A) . . . false pretenses, a false representation, or actual fraud . . .
>
>    (4) . . . embezzlement, or larceny.

According to Martin, because the Haucks stipulated to the "fraud based on deceit" and "civil theft" claims in the state court action, the elements of 523(a)(2)(A) and (a)(4) were satisfied, and therefore, the debt was non-dischargeable. (*Id.* at 65-67.) The Haucks countered this argument in their August 18, 2011 cross-motion for summary judgment, asserting that they never actually engaged in false representation or larceny (the relevant issues here), and that they did not intend to stipulate to any facts alleging the same. (*Id.* at 104.) Therefore, they maintained that the Bankruptcy Court should find the debt dischargeable. (*Id.* at 113.)

However, Martin further argued that, under the doctrine of issue preclusion, the Bankruptcy Court could not consider the Haucks' factual arguments that they never committed false representations or larceny, because those issues had previously been litigated and finalized in the Stipulated Judgment. (Doc. # 13-1 at 67-68.) The Haucks disagreed, contending that issue preclusion did not apply because the Stipulated Judgment was the result of mediation, rather than an adjudication by the court following litigation of the issues. (*Id.* at 108.) Specifically, in their cross-motion for summary judgment, the Haucks argued that the issues sought to be precluded were not actually litigated under the Stipulated Judgment, and that they never intended for the Stipulated Judgment to resolve the particular issues as to future proceedings. (*Id.* at 106-107.)

They also argued that the Stipulation and Stipulated Judgment should be considered invalid pre-petition waivers.  (*Id.* at 112.)

On January 15, 2012, the Bankruptcy Court issued an order granting Martin's motion for summary judgment and denying the Haucks' cross-motion for summary judgment.  (Doc. # 13-1 at 202-221.)  The Bankruptcy Court found that the Stipulated Judgment precluded relitigation of the issues of false representation, larceny, and embezzlement, and that the debt was therefore non-dischargeable under 11 U.S.C. § 523(a)(2) and (a)(4).  (*Id.* at 203, 215, 217.)  The Haucks filed an appeal with this Court on February 13, 2012.  (Doc. # 2.)

In their May 7, 2012 Opening Brief, the Haucks argue that the Bankruptcy Court erred in its legal analysis and conclusions regarding issue preclusion and also in failing to consider one of their arguments.  (Doc. # 23 at 5.)  First, the Haucks contend that the Bankruptcy Court erred by failing to apply the correct issue preclusion test in its analysis.  (*Id.*)  They suggest that the Bankruptcy Court's reasons for finding that issue preclusion applies – *i.e.*, that the Haucks were represented by counsel, attended mediation, and agreed to entry of judgment of the civil theft and fraud claims – demonstrate that the Bankruptcy Court applied the wrong test.  (*Id.*)  The Haucks further challenge the Bankruptcy Court's finding that the Haucks had the "requisite intent" to give the Stipulated Judgment preclusive effect.  (*Id.* at 10.)  Finally, the Haucks argue that the Bankruptcy Court erred by failing to consider whether the Stipulation was an

impermissible reaffirmation agreement or pre-petition waiver. (*Id.* at 5.) The appeal has been fully briefed and is ripe for review.[3]

## II. DISCUSSION[4]

### A. LEGAL STANDARD

Generally, a party dissatisfied by a bankruptcy court's decision may appeal that decision to either the district court or a bankruptcy appellate panel. 28 U.S.C. § 158(c)(1). The Court reviews the Bankruptcy Court's legal conclusions *de novo*. *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010).[5]

As mentioned, the Bankruptcy Court's Order stemmed from cross-motions for summary judgment. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 375). The nonmoving party may not rest

---

[3] Martin filed her Answer Brief on May 25, 2012 (Doc. # 26), and the Haucks filed their Reply Brief on June 18, 2012 (Doc. # 29).

[4] Although the Haucks requested oral argument (Doc. # 23 at 18), the Court has determined that oral argument would not materially assist the determination of this appeal.

[5] As such, the Court need not discuss the Bankruptcy Court's Order but, rather, will articulate its own analysis of the legal issues on appeal.

solely on the allegations in the pleadings but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

**B.     ISSUE PRECLUSION**

       1.     <u>Whether Issue Preclusion Applies to Stipulated Judgments</u>

The Haucks argue that the Bankruptcy Court failed to apply the proper test to determine whether issue preclusion applied.  They argue that the Bankruptcy Court should have looked to "the plain language of the Stipulation" to see whether the parties intended for the Stipulated Judgment to have preclusive effect with regard to the issues of false representation and larceny.  (Doc. # 23 at 10.)  Had the Bankruptcy Court looked to the plain language of the Stipulation, according to the Haucks, it would have concluded that the Stipulation "reflects no intent that the resolution of the claims would preclude the Haucks from attempting to discharge the settlement debt in bankruptcy." (*Id.*)  The Court determines that the Haucks' articulation of the proper test is overly simplistic and that the Stipulation manifests the parties' intent that the Stipulated Judgment would have preclusive effect with respect to the issues of fraud and civil theft.

In determining the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)). Issue preclusion "is a judicially created, equitable doctrine that bars the relitigation of an issue that has been previously decided in another proceeding." *Reynolds v. Cotton*, 274 P.3d 540, 543 (Colo. 2012) (citing *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007)). It is designed to "relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions." *Id.* (quoting *Tonko*, 154 P.3d at 405). The doctrine applies to bar subsequent litigation only if:

> (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* (quoting *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo. 1999)).

Issue preclusion does not typically apply to stipulated judgments. *Nichols v. Bd. of Cty. Comm'rs, Colorado*, 506 F.3d 962, 968 (10th Cir. 2007). This is because such judgments typically result "not from an adjudication but from a basically contractual agreement of the parties." 18A Charles Alan Wright & Arthur R. Miller § 4443 (2d ed. 2012). "The basically contractual nature of [stipulated] judgments has led to general agreement that preclusive effects should be measured by the intent of the parties."

9

*Id.* Thus, a stipulated judgment "will not be conclusive of any issues in a subsequent proceeding unless there is an agreement between the parties manifesting their intention for that to be the case." *Nichols*, 506 F.3d at 968 (quoting Restatement (Second) of Judgments § 27, cmt. e (1982)).

Scant guidance exists within the Tenth Circuit regarding how parties manifest such an intention. Accordingly, the Court draws on other courts' interpretations to inform its analysis. Clearly, this intention is manifested where the parties explicitly articulate it. *See Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) ("[T]he parties specifically provided that the debt . . . would not be dischargeable . . . . Consequently, the consent judgment should be given collateral estoppel effect."). Moreover, parties may "manifest an intent to be collaterally bound by the judgment . . . by stipulating to a specific factual finding." *People v. Felix*, 169 Cal. App. 4th 607, 615 (1st Dist. 2008). Preclusion is also "appropriate if the intent to preclude can be inferred from the words of the agreement or from the record." *Richard v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir. 1991) (quoting *Barber v. Int'l Bhd. of Boilermakers*, 778 F.2d 750, 756-58 (11th Cir. 1985)). Further, courts may consider whether the parties "reasonably could have foreseen the conclusive effect of their actions." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* at 794 (2d ed. 1984).

      2.      <u>Manifestation of Intent: Issue Preclusion and § 523(a)</u>

Because the Stipulated Judgment in the instant case does not explicitly state that the debt is or is not dischargeable, the Court looks to whether the parties "stipulated to a specific factual finding" and considers whether an intent to be collaterally bound on the issues of false representation and larceny may be "inferred from the words of the agreement or from the record." *See Felix*, 169 Cal. App. 4th at 615; *Richard*, 935 F.2d at 1245.

Unlike many consent judgments, which simply state that judgment is entered for a certain amount, often without even conveying the cause of action at issue, the stipulated judgment requested by the parties in this case was for $200,000 and "specifically based on the Plaintiff's 2nd Claim for Relief, **Deceit Based on Fraud**, and 4th Claim for Relief, **Civil Theft pursuant to C.R.S. §18-4-401**, as those claims are stated in the Plaintiff's First Amended Complaint and Jury Demand . . . ." (Doc. # 13-1 at 117) (emphasis in original). Written as such, these claims incorporate by reference specific facts articulated in Martin's First Amended Complaint. (Doc. # 13-1 at 26-27.) By agreeing to judgment premised on these specific claims (Doc. # 13-1 at 117-18), the Court determines that the Haucks stipulated to the corresponding facts alleged in the Second and Fourth Claims of the First Amended Complaint. (*Id.*)

Having found that the parties stipulated to specific factual findings, the Court now considers whether those findings satisfy the elements necessary to prove false representation and larceny under § 523(a)(2)(A) and (a)(4), respectively. To support

a finding of false representation under 523(a)(2)(A), it must be shown that:

> 1. The debtor made a false representation;
> 2. The debtor made the representation with the intent to deceive the creditor;
> 3. The creditor relied on the representation;
> 4. The creditor's reliance was reasonable;
> 5. The debtor's representation caused the creditor to sustain a loss.

*In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996); *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 489 (Bankr. D. Colo. 2002).

In the Second Claim of the First Amended Complaint, Martin incorporated by reference all of the factual allegations in the preceding paragraphs of the Complaint. (*See* Doc. # 13-1 at 26.) These facts, in combination with the additional facts alleged in the Second Claim, fulfill the requirements for a finding of false representation:

> (1) Defendants, and each of them, made a representation of a past or present fact(s).
> (2) The fact(s) was material.
> (3) At the time the representation(s) was (were) made, Defendants, and each of them, knew the representation(s) was (were) false.
> (4) Defendants made the representation(s) with the intent that Plaintiff would rely on the representation(s).
> (5) Plaintiff relied upon the representation(s).
> (6) Plaintiff's reliance was justified.
> (7) Such reliance caused injuries and damages to Plaintiff.

(*Id.*)

A similar analysis applies for purposes of addressing larceny pursuant to § 523(a)(4). Under § 523(a)(4), the Court may consider the state or federal common law definitions of larceny. *See In re Ormsby*, 591 F.3d 1199, 1204 (9th Cir. 2010).

Colorado law has merged larceny, stealing, embezzlement, and false pretenses into "theft." Colo. Rev. Stat. § 18-4-403. Under § 18-4-403,

> (1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value . . . .

As with her Second Claim, Martin incorporated by reference all preceding factual allegations in her Fourth Claim for relief. (*See* Doc. # 13-1 at 27.) Those facts, combined with the allegations in the Fourth Claim, satisfy the elements necessary to prove theft in Colorado:

> Defendants, and each of them, knowingly obtained title to, and exercised control over, the Property and Plaintiff's equity in the Property by deception, and intended to permanently deprive Plaintiff of the use or benefit of the Property and Plaintiff's equity in the Property.

(*Id.*)

Thus, by stipulating to the Second and Fourth Claims, the parties manifested their intention to be collaterally bound on the issues of false representation and larceny. Moreover, because the parties were assisted by counsel, the Court concludes that the Haucks could have reasonably foreseen that stipulating to these claims meant stipulating to their attendant factual allegations, absent a statement specifically indicating otherwise. *See* Moore, *et al.* at 794.

Because the Haucks manifested their intention to be precluded from re-litigating the issues of false representation and larceny, the Court agrees with the

Bankruptcy Court's holding and its implicit decision that the Haucks' debt is non-dischargeable under §§ 523(a)(2)(A) and (a)(4).

## C.  PREPETITION AGREEMENTS

The Haucks next argue that the Stipulation is "void and unenforceable as a means of determining the dischargeability of the debt," because it "was not drafted by the Haucks, their attorney, or Judge Goldberger."  (Doc. # 23 at 17.)  The Haucks fail to cite, and the Court has not found, any authority for the proposition that a stipulated judgment is "void and unenforceable" simply because it was not drafted by a certain party, its attorney, or the mediator of the parties' settlement.  The Court, therefore, rejects this argument.  Moreover, the Court notes the weakness of this argument, given that all parties, and their legal counsel, signed the Stipulation that gave rise to the Stipulated Judgment in this case.

The Haucks further assert that use of the Stipulated Judgment in the Bankruptcy Court "constitute[d] an improper attempt to obtain from [them] either a reaffirmation agreement concerning the Stipulated Judgment or a waiver with respect to their rights to seek bankruptcy protection."  (Doc. # 23 at 17.)  They argue that, if viewed as either a reaffirmation agreement or a pre-petition waiver, the Stipulated Judgment is unenforceable because it does not meet the requirements governing such agreements, as set forth in 11 U.S.C. § 524(c).  (Doc. # 29 at 10.)  The Court concludes that the

Stipulated Judgment is not properly characterized as either a reaffirmation agreement or a pre-petition waiver.[6]

Section 524(c) states that it governs agreements regarding debts that are "dischargeable." This is evident in the cases the Haucks cite. In *In re Minor*, 115 B.R. 690, 691 (D. Colo. 1990), for example, although the parties stipulated to judgment on claims of securities and common law fraud, which ordinarily would be non-dischargeable under 523(a), the parties explained that "this judgment is not an admission or confession that Defendant has committed securities fraud or common law fraud . . . ." Thus, the parties clearly intended that issue preclusion would not apply with respect to the claims entered, and so the debt was dischargeable under § 523(a). Consequently, the parties' subsequent statement that "it is the intent of the parties and of the Court that this judgment should not be dischargeable in bankruptcy" was subject to the guidelines of § 524(c), because this stipulation referred to a dischargeable debt. (*Id.*) This occurrence in *In re Minor* is distinct from the setting in the instant case, in which the parties stipulated to judgment based specifically on claims of "deceit based on fraud" and "civil theft" as pled in Plaintiff's underlying state-court Complaint.

---

[6] As the Haucks assert, both reaffirmation agreements and prepetition waivers are generally governed by 11 U.S.C. § 524(c). A pre-petition waiver is an agreement between the parties, prior to the filing of a bankruptcy petition, that the debt at issue will not be dischargeable. Reaffirmation agreements reaffirm pre-petition waivers. Black's Law Dictionary (2d ed. 2009). *See In re Cole*, 226 B.R. 647, 652 (B.A.P. 9th Cir. 1998); *In re Minor*, 115 B.R. 690, 695 (D. Colo. 1990) ("Congress was greatly concerned that a debtor waiving dischargeability of a particular debt be afforded the procedural protections provided in § 524(c) . . .").

As explained previously, the factual allegations of these claims fulfill the elements of §§ 523(a)(2)(A) and (a)(4), thus excepting the debt from discharge.[7]

Because the debt in the instant case is not dischargeable, § 524(c) is irrelevant here.  This result reflects the Court's twin duties to consider both Congress's "concern that a debtor not be unduly pressured into executing a reaffirmation agreement" and its desire to "ensure that 'all debts arising out of' fraud are 'excepted from discharge.'" *Archer v. Warner*, 538 U.S. 314, 315 (2003) (quoting *Brown v. Felsen*, 442 U.S. 127, 134 (1979)).

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that the January 13, 2012 Order of the United States Bankruptcy Court is AFFIRMED.

DATED:  March   28  , 2013

BY THE COURT:

*Christine M Arguello*

CHRISTINE M. ARGUELLO
United States District Judge

---

[7] Likewise, in *In re Cole*, where the debt would ordinarily have been dischargeable, § 524(c) governed the parties' stipulated agreement that the debt was non-dischargeable.  226 B.R. 647, 649-50, 653 (B.A.P. 9th Cir. 1998).